**SO ORDERED.**

**SIGNED this 30 day of November, 2007.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**
_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## FAYETTEVILLE DIVISION

IN RE:                                                    CASE NO.

BROOKS LEWIS MUSSELMAN                    07-00701-8-RDD

      DEBTOR

## ORDER REGARDING OBJECTION TO
## CONFIRMATION OF PLAN

This matter is before the court on the objection to the trustee's motion for confirmation of the debtor's chapter 13 plan by eCast Settlement Corporation ("eCast"). A hearing was held in Fayetteville, North Carolina on September 6, 2007. The parties were given twenty days within which to file a legal memorandum or brief regarding the issues presented. After hearing the arguments of counsel, the court continued the matter to November 1, 2007 for further hearing, which was then continued by consent of the parties to December 6, 2007. However, after considering the arguments together with the briefs submitted by both parties in this case, the court has determined that no further hearing is necessary.

The debtor filed a petition for relief pursuant to chapter 13 of the Bankruptcy Code on February 27, 2007. Form B22C, filed with the debtor's petition, indicates that the debtor has above-

median income, with monthly disposable income under 11 U.S.C. § 1325(b)(2) of *negative* $255.80. The debtor's proposed plan, filed simultaneously with his petition, proposes plan payments of $459.00 per month for 55 months.[1]  The proposed plan states payments will be used to pay the administrative, priority, cosign protect, and secured claims in full.[2]  Pursuant to In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006), the debtor's proposed plan proposes no payments to unsecured creditors because he has negative monthly projected disposable income.  The trustee's motion for confirmation reflects the terms of the proposed plan submitted by the debtor.[3]

eCast is the holder of two unsecured claims against the debtor with balances, at the time of filing, of $27,286.97 and $709.11, or approximately 48% of the debtor's scheduled unsecured nonpriority debt.  eCast filed an objection to the trustee's motion for confirmation on several grounds.

First, eCast objects to the term of the debtor's plan of 55 months.  eCast believes the debtor's plan should be for 5 years.

Second, eCast argues that all of the debtor's projected disposable income is not being used to make payments to unsecured creditors pursuant to 11 U.S.C. § 1325(b)(1)(B).   eCast argues several changes should be made to the computation of the debtors projected disposable income, one of which is to use the debtor's actual expenses rather than the national standard.

_____

[1]The amount of the plan payment proposed is equal to the debtor's monthly net income, as determined by subtracting the debtor's expenses on Schedule J from the debtor's income on Schedule I.

[2]By inclusion of the "cosign protect" language, if the debtor is a cosigner or comaker of an obligation, the plan proposes to pay that class of claims in full.

[3]A motion for confirmation by the trustee is the procedure used in the Eastern District of North Carolina to begin the confirmation process.

2

Third, eCast argues that, based upon the previous bases for objection, the debtor's plan should not be confirmed pursuant to 11 U.S.C. § 1325(a)(1). The court will review each of eCast's grounds for objection within the context of 11 U.S.C. § 1325.

## 11 U.S.C. § 1325(b)(1)

11 U.S.C. § 1325(b)(1) states:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Based upon the plain language of the statute, Section 1325(b) applies *only* when an objection to confirmation of the plan has been raised by either the trustee or the holder of an allowed unsecured claim. See In re Jackson, 353 B.R. 849 (Bankr. E.D.N.C. 2006). In this case, Section 1325(b) applies because eCast, holder of an allowed unsecured claim, has objected to the confirmation of the plan. Because the debtor has not provided that eCast be paid in full, Section 1325(b)(1)(B) applies.

## 11 U.S.C. § 1325(b)(2)

eCast encourages the court to consider the meaning of projected disposable income as a forward-looking concept, as opposed to an historical concept of the debtor's current monthly income as calculated pursuant to 11 U.S.C. § 101(10A) and set forth in Form B22C. eCast argues that the term "projected" is a modifier, allowing the court to treat the disposable income figure determined

pursuant to 11 U.S.C. § 1325(b)(2) as merely a starting point for determining the debtor's projected disposable income.

As previously discussed, 11 U.S.C. § 1325(b)(1) provides for either full payment of the objecting unsecured creditor's claim or a showing that all "projected disposable income to be received" during the "applicable commitment period" be applied to make payments to unsecured creditors under the plan.  Congress then went on to define disposable income in 11 U.S.C. Section 1325(b)(2).

There has been much debate among courts throughout the country regarding the meaning of the term "projected disposable income."  Compare In re Hardacre, 338 B.R. 718 (Bankr. N.D. Texas 2006); In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006); In re Kibbe, 342 B.R. 411 (Bankr. D.N.H. 2006) (all holding that projected disposable income is different from disposable income) with In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006) (holding that projected disposable income for above-median debtors is disposable income as defined by § 1325(b)).  While the use of the word "projected" as an adjective before the term "disposable income," appears to modify the meaning of "disposable income," if Congress had intended different meanings, then why did Congress choose to redefine "disposable income"?

In 11 U.S.C. § 1325(b)(2), Congress defines "disposable income" and states that it is doing so "[f]or purposes of this subsection," referring to subsection (b).  The term "disposable income" is not used in this subsection in any other capacity than with the term "projected disposable income."  Therefore, the only reasonable explanation is that Congress intended to change the definition of disposable income from its pre-BAPCPA computation, i.e. subtracting Schedule J expenses from

Schedule I income, to the computation as specifically stated within the definition provided by Section 1325(b)(2).

First, to judicially modify the definition of "disposable income" as given in § 1325(b)(2), would require the court to create a formula for determining payments to unsecured creditors, rather than following the clear statutory definition. Several courts have concluded that use of the word "projected" distinguishes projected disposable income from disposable income, as defined in Section 1325(b)(2) and requires that the court use the "old" method of computing disposable income to yield projected disposable income, i.e. subtract the current monthly expenses on Schedule J from the current monthly income on Schedule I. See, e.g., In re Fuller, 346 B.R. 472 (Bankr. S.D. Ill. June 21, 2006) (projected disposable income to be determined by subtracting expenses from Schedule I); In re Demonica, 345 B.R. 895 (Bankr. N.D. Ill. July 31, 2006) (Schedule I should be used to determine projected disposable income since it reflects current income at the time of filing).

Still others have treated the disposable income figure reached by Form B22C to be merely a "starting point" for determining the debtor's projected disposable income which may be adjusted according to the debtor's current financial situation. See, e.g., In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006) (holding that the Statement of Current Monthly Income was the presumptive amount of projected disposable income, but presumption could be rebutted by the debtor upon a showing of substantial change of circumstances); In re Risher, 344 B.R. 833 (Bankr. W.D. Ky. 2006) (holding that the disposable income arrived at with Form B22C is a beginning point for evaluating the debtor's past and current financial status). While these may sound like reasonable means of reaching projected disposable income, the "starting point" and "presumption" language are judicially

5

written statutes, which is not the job of the judiciary, but the job of the legislative branch.  Although the debtor's current financial situation may be significantly different from the situation illustrated by the projected disposable income figure derived at by Form B22C, Congress gave the court some flexibility in determining the debtor's current monthly income in unusual circumstances. Specifically, 11 U.S.C. § 101(10A)(ii) allows the court to determine another date on which current monthly income will be determined if the debtor does not file Schedule I, and 11 U.S.C. Section 521(a)(1)(B)(ii) requires the filing of Schedule I unless the court orders otherwise.  See In re Ingram, Case No. 06-02714-8-RDD (Bankr. E.D.N.C. Nov. 20, 2006).

If Congress had intended for "projected disposable income" to continue to be a figure derived by subtracting Schedule J expenses from Schedule I income, Congress would not have changed the definition of disposable income in § 1325(b)(2) and (3) which employs current monthly income as defined in § 101(10A), which in turn specifically excludes benefits received under the Social Security Act, *et al.*, and differentiates expenses for above-median and below-median income debtors.  And, if Congress had intended that the definition of "disposable income" be merely a starting point or a presumptive figure for determining "projected disposable income," allowing courts the flexibility to make that determination, it could have so stated within the confines of § 1325(b).  Instead, Congress chose to impose a rigid definition with little room for flexibility by the court.

Second, this interpretation is further supported by the legislative history of the statute.  H.R. Rep. 109-31(I) states that § 1325(b)(1) specifies that courts must find that a debtor's *disposable income* is to be used to pay unsecured creditors.  H.R. Rep. No. 31(I), 109th Cong., 1st Sess. at 52 (2005), reprinted in 2005 U.S.C.C.A.N. at 123.  Defining the term "disposable income" was a

6

fruitless task if the new definition in § 1325(b)(2) is not the same "disposable income" as in Section 1325(b)(1)(B).  As stated in In re Alexander, 344 B.R. 742, 749 (Bankr. E.D.N.C. 2006), "If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."  Therefore, the language of the statute is clear.  Unless an absurd result occurs, the court's job is to apply the plain meaning of the statutory language and not to question congressional policy or rewrite the statute.  Certainly, Congress could have rationally made a policy decision to determine an amount to be paid to unsecured creditors based on the average income of the debtor for the six months prior to filing as being more reliable and indicative of projected disposable income.

Thus, this court holds that the term "projected disposable income" as used in § 1325(b)(1)(B) and the term "disposable income" as defined in § 1325(b)(2) have the same meaning as to above-median debtors and will determine a monthly amount, not necessarily the only amount, to be paid to unsecured creditors through the chapter 13 plan.  In § 1325(b)(1)(B), the new computation of "disposable income" is simply projected out over the time of the applicable commitment period, which will be addressed later in this opinion.  The objection by eCast to confirmation on this ground is **DENIED**.

### 11 U.S.C. § 1325(b)(3)

eCast, in its objection, sets forth the expenses used by the debtor in computing his projected disposable income and requests that the court lessen these expenses from the IRS standards to the debtor's actual expenses.  eCast objects as follows:

45.  At Line 25B of the Form B22C, the Debtor takes a deduction of $112.63 for the "Local Standards: housing and utilities; mortgage/rent expense."  This is the resulting amount when the Debtor's actual mortgage payment of $821.37, averaged over 60 months as required by the Form B22C, is subtracted from the Internal

Revenue Standard of $934.00.  Then, at Line 47(c), the Debtor takes an additional deduction of $821.37 for the monthly mortgage payment, for a total mortgage/rent expense of $934.00.  However, the Debtor's actual mortgage payment, as reported on the Form B22C, is just $821.37 monthly.  Thus, the Debtor is not using $112.63 of this allowance but subtracts it from his income anyway in the calculation of disposable income.

46.  At Line 28 of the Form B22C, the Debtor takes a deduction of $315.30 for the "Local Standards: transportation ownership/lease expense; Vehicle 1."  This is the resulting amount when the Debtor's actual car payment of $155.70, averaged over 60 months as required by the Form B22C, is subtracted from the Internal Revenue Standard of $471.00.  Then, at Line 47(a), the Debtor takes an additional deduction of $155.70 for the monthly debt payment on the vehicle, for a total transportation ownership expense of $471.00.  However, the Debtor's actual vehicle payment, as reported on the Form B22C, is just $155.70 monthly.  Thus, the Debtor is not using $315.30 of this allowance, but subtracts it from his income anyway in the calculation of disposable income.

47.  Further, at Line 29 of the Form B22C, the Debtor takes a deduction of $170.00 for the "Local Standards: transportation ownership/lease expense; Vehicle 2."  This is the resulting amount when the Debtor's actual car payment of $162.00, averaged over 60 months as required by the Form B22C, is subtracted from the Internal Revenue Standard of $332.00.  Then, at Line 47(b), the Debtor takes an additional deduction of $162.00 for the monthly debt payment on the vehicle, for a total transportation ownership expense of $332.00.  However, the Debtor's actual vehicle payment, as reported on the Form B22C, is just $162.00 monthly.  Thus, the Debtor is not using $170.00 of this allowance but subtracts it from his income anyway in the calculation of disposable income.

48.  The Debtor is not entitled to the entire Local Standard allowance for a mortgage/rental expense totaling $934.00 when the actual mortgage payment, averaged over 60 months, is only $821.37.  The Debtor is not entitled to the entire Local Standard transportation allowances totaling $803.00 ($471.00 plus $332.00) when the actual vehicle payments, averaged over 60 months, total only $317.70 ($155.70 plus $162.00).  The Debtor will have a monthly windfall totaling $597.93 ($112.63 plus $315.30 plus $170.00) if he is permitted to deduct the Local Standard allowances for a mortgage/rental expenditure and transportation expenditures in excess of the actual costs of $821.37 (Mortgage), $155.70 (First Vehicle), and $162.00 (Second Vehicle).  This Court should not permit such a result.

49.  The Internal Revenue Manual, 5.15.1 Financial Analysis Handbook, at Section 5.15.1.7 Allowable Expenses, No. 4 clearly states that "Taxpayers will be allowed the local standard or the amount actually paid, whichever is less." (emphasis added).  A copy of the Financial Analysis Handbook can be found at www.irs.gov/irm/part5.

8

Counsel for eCast then goes on to argue that the court should follow the reasoning of In re Rezentes, 2007 Bankr. LEXIS 1132 (Bankr. D. Haw. April 2, 2007), by adopting the analysis of the Financial Analysis Handbook and find that the debtor is entitled to the lesser of the Local Standard expenses or the actual amounts paid.  However, this court declines to follow Rezentes, and finds persuasive the cases of In re Williams, Case No. 07-00396-5-ATS (Bankr. E.D.N.C. October 25, 2007), In re Briscoe, 374 B.R. 1 (Bankr. D. Col. 2007), and In re Enright, 2007 WL 748432 (Bankr. M.D.N.C. March 6, 2007) all of which found that the IRS standards were to be applied as a fixed amount.

11 U.S.C. § 1325(b)(2) defines disposable income as current monthly income less reasonably necessary expenditures.  11 U.S.C. § 1325(b)(3) further defines reasonably necessary expenditures for above-median debtors as those set out in 11 U.S.C. § 707(b)(2).  That is

> The debtor's monthly expenses *shall be* the debtor's *applicable* monthly expense amounts specified under the National Standards and Local Standards, and the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service . . .

11 U.S.C. § 707(b)(2) (emphasis added).  It is noteworthy that the term "shall be" was used by Congress, creating a requirement that those standards be used with no flexibility. Nowhere in the statute does Congress mandate the use of the lesser of the actual expense and the applicable national standards.  It appears that Congress made a rational policy decision when determining that these fixed amounts should be used, as they represent a minimal amount determined to be reasonably necessary for living expenses and eliminated the chance for above-median income debtors to inflate actual living expenses to abuse the formula for determining projected disposable income.  In fact, Congress changed the language used in a prior version of BAPCPA, which would have required the courts to apply the IRS standards as implemented under the IRS financial analysis.  "The language referring to the IRS financial analysis was changed to the current language of Section

707(b)(2)(A)(ii)(I), which simply provides that the debtor shall take the 'applicable monthly expense amounts specified under the National and Local Standards.'" <u>In re Enright</u>, 2007 WL 748432 at *4 (Bankr. M.D.N.C. March 6, 2007) (quoting <u>In re Fowler</u>, 349 B.R. 414, 419 (Bankr. D. Del. 2006)).

> In discussing this requirement within the legislative history, it is stated that

> In addition to other specified expenses, the debtor's monthly expenses-exclusive of any payments for debts (unless otherwise permitted)-*must be* the applicable monthly amounts set forth in the Internal Revenue Service Financial Analysis Handbook as Necessary Expenses under the National and Local Standards categories and the debtor's actual monthly expenditures for items categorized as Other Necessary Expenses.

H.R. Rep. No. 31(I), 109th Cong., 1st Sess. at 13-14 (2005), <u>reprinted in</u> 2005 U.S.C.C.A.N. at 99-100 (emphasis added). This clearly indicates that Congress intended for the IRS standards to be used for the necessary expenses category and the debtor's actual expenses to be used for the other necessary expenses category. There is no indication that Congress intended for the debtor's actual expenses to be used for the necessary expenses category. If so, why would Congress have made a distinction between the national and local standards and the debtor's other necessary expenses? Congress could have clearly stated that the debtor's actual expenses were to be used for all expenses.

> When the court looked at "applicable" within the context of Section 707(b)(2)(A)(ii)(I), it found that Congress drew a distinction in the statute between the "applicable" expenses on the one hand and "actual" expenses on the other. Therefore, expenses under the Local Standards only need to be applicable to the debtor, because of where he lives and how large his household is. It makes no difference whether he actually has them.

<u>In re Enright</u>, 2007 WL 748432 at *4 (Bankr. M.D.N.C. March 6, 2007) (internal quotations and citations omitted).

> In applying the plain language of these provisions of § 1325(b), an above-median debtor's disposable income shall be determined by subtracting the IRS standard expenditures and the debtor's

actual monthly expenses for those things classified as "Other Necessary Expenses" from the debtor's current monthly income, as defined in 11 U.S.C. §101(10A). This calculation has been reflected in Form B22C, which above-median debtors are required to complete and file as part of their petition. Thus, the disposable income figure arrived at on Form B22C is a monthly amount of disposable income that will be applied to make payments to unsecured creditors under the chapter 13 plan.

eCast also opposes the debtor's deduction of his secured payments in the amount of $179.66 on a 2004 Fleetwood Folding Caravan Trailer. In its objection, eCast explains as follows:

> 52. eCast contends that any repayment for the Trailer is not permissible as it is not authorized by section 707(b)(2)(A) or (B). The Code requires that permissible expenses must be reasonably necessary for the maintenance or support of the debtors or their dependents. 11 U.S.C. § 1325(b)(2). For a debtor whose current monthly income exceeds the median family income of her state, as is the case here, reasonable necessity is determined in accordance with the provisions of 11 U.S.C. § 707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(3). Section 707(b)(2)(A)(i) relates to motions to dismiss for abuse under section 707(b)(1) while section 707 (b)(2)(A)(ii) provides a detailed enumeration of expenses that are reasonably necessary and how they are quanitified. A debtor's permissible expenses are specified in standardized tables promulgated by the Internal Revenue Service.

Subpart C of Form B22C allows the debtor to deduct future payments on secured claims pursuant to 11 U.S.C. § 707(b)(2)(A)(iii), which provides

> (iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of —
>> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>> (II) any *additional* payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

(emphasis added).  Line 47 of Form B22C is devoted to debts as described in § 707(b)(2)(A)(iii)(I) and is the line on which the debtor deducted the expense of the trailer.  Line 48 of Form B22C is devoted to debts as described in § 707(b)(2)(A)(iii)(II), which requires that the property be "necessary for your support or the support of your dependents."  As indicated by Form B22C, the plain language of § 707(b)(2)(A)(iii) makes a distinction between its two subsections, requiring only the debts in subsection (II) to be necessary for the support of the debtor and the debtor's dependents. Therefore, this debtor is not under an obligation to show that the trailer is necessary for his support or for the support of his dependents.[4]  Again, 11 U.S.C. § 1325(b)(3) requires amounts reasonably necessary as expenses to be determined under 11 U.S.C. § 707(b)(2) which includes Section 707(b)(2)(A)(iii)(I).  The objection by eCast to confirmation on this ground is **DENIED**.

### 11 U.S.C. § 1325(b)(4)

eCast contends that the court should follow the majority of courts across the country, which have held that the applicable commitment period defined in § 1325(b)(4) is a time period, as opposed to a multiplier, and should be either 3 years or 5 years, depending upon whether the debtor's current monthly income is above or below median income.  eCast further contends that the applicable commitment period may be shorter than 3 or 5 years, only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

In cases where an objection to confirmation has been made by either the trustee or an unsecured creditor and the debtor is not proposing to pay the unsecured creditor's claim in full, 11 U.S.C. § 1325(b)(1)(B) provides that

---

[4]In this case, a disallowance of the secured payment on the trailer does not change the debtor's projected disposable income from negative to positive (-$255.80 vs. -$76.14).

the plan provides that all of the debtor's projected disposable income to be received in the *applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(emphasis added).  11 U.S.C. § 1325(b)(4) defines "applicable commitment period" as

> (A) subject to paragraph (B), *shall be* —
>     (i) 3 years; or
>     (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than —
>         (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>         (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
>         (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4; and
> (B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but *only* if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

(emphasis added).

Although some courts have determined that this applicable commitment period is a multiplier, simply to be used as a means of determining the amount of money to be paid to unsecured creditors,[5] the use of words in the statute like "years" and "period," connote a length of time, not a multiplied amount of money.  This court sides with the line of cases requiring that the applicable commitment period be treated as a period of time.[6]  The court notes again, as in 11 U.S.C.

---

[5]See In re Williams, Case No. 07-00396-5-ATS (Bankr. E.D.N.C. October 25, 2007); In re Mathis, 367 B.R. 629 (Bankr. N.D. Ill. 2007).

[6]See In re Hylton, 374 B.R. 579 (Bankr. W.D. Va. 2007); In re Nance, 371 B.R. 358 (Bankr. S.D. Ill. 2007); In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007); In re Girodes, 350 B.R. 31 (Bankr. M.D.N.C. 2006); In re Casey, 356 B.R. 519 (Bankr.  E.D. Wash. 2006).

Section 707(b)(2), Congress used the term "shall be" when defining applicable commitment period in Section 1325(b)(4)(A). The "shall be" language is mandatory, not permissive, or flexible.

Likewise, Section 1325(b)(4)(B) states that the applicable commitment period "may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but *only if* the plan provides for payment in full of all allowed unsecured claims over a shorter period." (emphasis added). This language is confirmed by the legislative history, which states:

> a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds. If the current monthly income of the debtor and the debtor's spouse fall below these thresholds, then the duration of the plan may not be longer than three years, unless the court, for cause, approves a longer period up to five years. The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

H.R. Rep. No. 31(I), 109th Cong., 1st Sess. at 79 (2005), reprinted in 2005 U.S.C.C.A.N. at 143. This legislative history suggests that the applicable commitment period drives the required length of the plan. The length of the applicable commitment period is tied to the above or below-median current monthly income of the debtor, not to the projected disposable income of the debtor. Therefore, if projected disposable income is zero or below, the applicable commitment period must still be 3 years for below-median income debtors or 5 years for above-median income debtors.

Nothing in § 1325(b)(4) states that the applicable commitment period shall be less than 3 or 5 years if the debtor has no projected disposable income. Because the applicable commitment period may only be less than 3 or 5 years if unsecured creditors are paid in full, Congress must have anticipated or forecast some amount going to unsecured creditors from the plan during the applicable commitment period, even if the debtor has no projected disposable income. So, even when the debtor has no projected disposable income, the applicable commitment period must be 3 or 5 years,

14

which in turn, sets the required minimum length of the plan, or in other words, the required

"commitment" a debtor must make in chapter 13.

> It is irrelevant whether the projected disposable income is zero or $1,000 or some other amount. If unsecured claims are not to be paid in full, the plan must have a length of three (3) years for below-median income debtors and not less than five (5) years for above-median income debtors.

In re Casey, 356 B.R. 519, 527 (Bankr. E.D. Wash. 2006).

The Congressional intent of BAPCPA was to provide higher payouts to creditors. Projected disposable income is an amount, which if positive, is over and above the regularly proposed plan payment. In this case, if the debtor's monthly projected disposable income had been $187.00, the debtor may have chosen to surrender the debtor's trailer or cut expenses elsewhere and commit these funds to the projected disposable income above and beyond the debtor's proposed monthly payment, which the debtor derived from what I minus J provides. Consequently, upon objection, if the applicable commitment period is 3 or 5 years, then so must the period of the plan. The applicable commitment period dictates the length of a plan when an objection is filed. The applicable commitment period is tied to whether or not the debtor is above-median or below-median, not to whether or not there is positive projected disposable income. A positive projected disposable income, which is the amount determined by the means test of Form B22C, will be used to make payments to unsecured creditors. Therefore, applying the plain language of § 1325(b)(4), a chapter 13 plan, in which the debtor is above-median income and *an objection has been raised*, must provide for payments over a period of 5 years, unless debtors pay all allowed unsecured claims in full, prior to the expiration of the 5 years.

In cases where projected disposable income is negative, as in this case, the above-median income debtor must propose a plan for payments over a period of 5 years, unless under Section 1325(b)(4)(B) unsecured creditors are paid in full over a shorter period.

Nowhere in the statute does language appear that allows the applicable commitment period to be less than 3 or 5 years if projected disposable income is negative. In re Alexander and In re Williams both allow plans to terminate prior to the expiration of three or five years if projected disposable income is negative. Such is contrary to § 1325(b)(4)(B), which states the plan may be a shorter period *only* if unsecured creditors are paid in full. In interpreting this statute, the court must follow the requirements as set forth in Lamie v. United States Trustee, 540 U.S. 526, 124 S. Ct. 1023; 157 L. Ed. 2d 1024 (2004).

> The starting point in discerning congressional intent is the existing statutory text and not the predecessor statutes. It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.

Id. at 534 (internal quotation marks omitted)(citations omitted). If Congress had intended plans to end when zero or negative projected disposable income was present, Congress could have easily said so. That is a job for Congress, not this court.

Other statutory sections support finding the applicable commitment period as a defined period of time; rather than a multiplier, or nonexistent if projected disposable income is zero or less. First, 11 U.S.C. § 521 requires the debtor to file Schedules I and J, and a statement setting forth any expected increase or decrease in income. Subsection (j) of § 521 requires debtors to continue to file tax returns throughout the pendency of the debtor's case. Second, the ability of unsecured creditors and trustees to monitor cases and propose modifications under § 1329 would be cut short if plans

were allowed to terminate early.  See In re Girodes, 350 B.R. 31 (Bankr. M.D.N.C. 2006).  Pursuant to § 1329(b), Section 1325(b) does not apply to proposed modified plans, which may open the door for trustees and unsecured creditors to propose modifications when there may be a substantial and unanticipated change in the debtor's post-confirmation financial condition, *i.e.* an unanticipated large salary increase.  See In re Murphy, 474 F.3d 143 (4th Cir. 2007). Third, Section 1322(a) requires submission of future earnings and future income for the execution of the plan.

## 11 U.S.C. § 1325(a)(1)

eCast argues that, based upon its other arguments, the debtor's plan cannot be confirmed pursuant to 11 U.S.C. § 1325(a)(1), which states

(a) Except as provided in subsection (b), the court shall confirm a plan if
(1)  the plan complies with the provisions of this chapter and with the other applicable provisions of this title.

Because the court has determined that the debtor correctly computed his plan payments, except for extending them for the full applicable commitment period of 5 years which will be required by this order, eCast's objection based upon § 1325(a)(1) is moot.

## Summary

In this case, Musselman has proposed to make payments of $459.00 per month for 55 months, with his plan proposed to end after his administrative, secured and priority claims have been paid in full.  The figure of $459.00 represents Musselman's monthly net income, and his proposed plan payment, according to Schedules I and J.  Musselman is an above-median income debtor, and has therefore computed his projected disposable income pursuant to Form B22C.  Form B22C determines that Musselman has projected disposable income of negative $255.80.

eCast, an unsecured creditor of Musselman, filed an objection to the confirmation of Musselman's proposed plan.  Therefore, § 1325(b)(1) applies, and Musselman must show that all of his projected disposable income is devoted to his unsecured creditors for his applicable commitment period, unless he has proposed to pay his unsecured creditors in full prior to the expiration of that period.  Because Musselman is an above-median debtor, his applicable commitment period is 5 years.  However, Musselman has no projected disposable income to devote solely to his unsecured creditors, as he has a negative projected disposable income.  Because he has no projected disposable income, Musselman's plan payment will consist of only his base amount, which in this case, the debtor determined by subtracting Schedule J from Schedule I, which the debtor must have concluded was his ability to pay.[7]  Because there was an objection filed to Musselman's plan, he must continue to remain in his plan for the applicable commitment period of 5 years, during which time, he must devote his base amount into the plan.  Therefore, Musselman's plan may be confirmed if the plan proposes $459.00 per month for 5 years, for a total pay-in of $27,540.00.  eCast's objection, based on the length of the applicable commitment period, to confirmation of the plan is **ALLOWED**.

**SO ORDERED**.

**END OF DOCUMENT**

---

[7]For clarification purposes, had Musselman had positive projected disposable income, it would have been necessary for him to propose a plan payment in the amount of his base amount (I minus J) plus his projected disposable income for a period of 5 years, unless unsecured creditors were paid in full prior to the expiration of 5 years.